## CITIES SERVICE OIL CO v DIXON

Ohio Appeals, 7th Dist, Mahoning Co

Decided Oct 21, 1932

Manchester, Ford, Bennett & Powers, Youngstown, for plaintiff in error.

H. H. Wickham, Youngstown, for defendant in error.

**POLLOCK, J.**

The first error complained of is in the introduction of evidence. We will refer to these parties plaintiff and defendant as they appeared in the court below. The court, over the objection of the defendant, permitted the plaintiff to prove the manner of operating this pump and the condition of the tank which started the fire, and produce evidence which tended to prove negligence in pumping the gasoline out of the tank, and we might say defendant was removing this gasoline from this tank in a negligent manner. The evidence is that the hose should have been attached to this valve under the tank and that the manhole should have been covered, that in a gasoline tank there is gasoline vapor above the gasoline in the tank which would cause an explosion if it comes in contact with fire. This operation is urged as error. In other words, the claim of the plaintiff is that if a fire is started negligently and a party goes to assist in putting the fire out and is injured, such negligence in starting the fire can be shown to prove the liability of the defendant.

We do not think any such rule prevails. When fire is started those who go to help put out the fire are not concerned how the fire was started. It is not a question whether the fire was negligently started or not. This question was before the court of Virginia

in the case of Lunt v Post Printing Company, found in 30 L.R.A., New Series, beginning on page 60. What we are reading is in the opinion on page 70:

"The authorities in announcing the rule of non-liability to firemen do not consider the origin of the fire at all. They announce the law, regardless of whether the fire was started by the negligence of the occupant or not. Some fires originate without the intervention of human negligence."

It did not affect this plaintiff, his rights in any way, whether this fire was started by the negligent act of the defendant or not. It was only a question, so far as the defendant's liability, what occurred after he went to the fire, so that we think the introduction of this evidence was error, and reversible error.

The next error that we will refer to is in the charge of the court. The court after stating the issues, which was practically reading the pleadings, said:

"The grounds of negligence claimed by the plaintiff against the defendant, and which in order to establish that claim he must prove by the greater weight of the evidence, as to one or more of these he sets out, and which are the following: First, that the defendant was operating when the plaintiff came on the premises at its invitation, as he claims, express or implied, about a tank a defective motor, whereby sparks were thrown, igniting the gasoline. Second, that the defendant failed to keep a manhole door on a tank closed. Third, his claim that the defendant failed to give warning of certain dangers resulting from the operating of the tank in the manner he sets out it was conducted."

Plaintiff first objects to the court referring to these first two grounds of negligence, first as to the sparking motor. The motor was setting out open. Mr. Dixon saw it, knew it was sparking; in fact, he had been an employe for many years of the Duncan Oil Company. That company owned this property, and probably he was as familiar with this property and surroundings and the dangers and conditions of gasoline under those circumstances as any one at the fire. He saw the motor sparking and he assumed whatever risk that it caused. The fire was then burning and the sparking of the motor did not add new danger.

The next ground is that the defendant failed to keep the manhole door on the tank closed; in other words, that in announcing the rule that a person must keep his property in a safe condition for a person if fire breaks out to come on the property. That is not the true rule. The mere fact that this door was off is all the jury had to find under this charge to return a verdict for plaintiff. It was off. There is no contradiction of that fact and the jury would have a right to find in favor of plaintiff. These two ought not to have been given, and then the court proceeds:

"Now, these are the only grounds that you are to consider in this case and as bearing on this duty of ordinary care to the plaintiff, provided you find by the greater weight of the evidence that he was on the premises of the defendant by its invitation, express or implied, the law is this: Where there is a common interest or a mutual advantage between a person who owns and occupies premises and a person who enters upon the premises, there is said to be an invitation, or if a person who enters upon the premises is expressly invited to do so, he is there by invitation. The proprietor of the premises who expressly or impliedly invites him thereon holds out to such other and assumes the obligation that the premises and the appliances thereon are in a reasonably safe condition, and he is bound to use ordinary care and diligence to so keep them and the appliances thereon and to manage and operate them in a safe condition when and after such person invited comes upon the premises, and for a breach of this obligation the owner of the premises is liable in damages to a person who is injured as a direct and proximate result of such breach, and who himself is in the exercise of ordinary care."

Here was a fire on these premises, fire and gasoline running out of this hose on the ground going towards this tank, and yet the court said to the jury under those circumstances that the owner of these premises must keep them in a safe condition, "and he is bound to use ordinary care and diligence to so keep them, and the appliances thereon, in a safe condition." Then on the next page he continues and defines or explains an invitee:

"It is the duty of the proprietor if his premises are in any respect dangerous, to give persons expressly or impliedly invited thereon, sufficient warning of the existence and nature of that danger to enable them by the use of ordinary care to avoid it.

The proprietor is under a continuing duty of exercising ordinary care as to inspection of the premises and the management of the appliances thereon, to the end of seeing that they are reasonably safe for the protection of those whom he expressly or impliedly invites to come to the premises, and if he neglects his duty in this respect so that the premises become unsafe and gives no sufficient warning thereof to a person on the premises by invitation, who is injured as a proximate result without having been guilty of any negligence directly contributing to the injury on his own part, then such person would be entitled to recover."

Without any limiting of the warning necessary, the court charges the jury about the warning. It is a conceded fact by the defendant that he knew and saw everything connected with the fire on those premises, except that he did not know that the cover was off this manhole until it was too late for him to leave before the explosion. There is no limitation as to the duty to warn a person going on the premises if there is a dangerous condition. We have said he saw this condition and knew all about it except that this manhole was not covered. The rule, of course, is well settled that warning is not necessary where the danger is open and can be seen; Thompson on Negligence, §4810; that warning is not necessary for what the person can see and know and does see. The objection to this charge is that it violates the rule the Supreme Court has announced that the charge should be adapted to the real issue that the jury has to decide and a statement of the law applicable to the same. **Telindo v Traction Company, 109 Oh St, 125; Used Car Company v Humphrey, 120 Oh St, 405.** The real issue the jury had to decide in this case was the question growing out of plaintiff's knowledge of the dangerous condition, or lack of knowledge that this rubber hose was sticking in the manhole.

The question as to what relation this plaintiff in error stood when he went on those premises is quite an interesting question. Was he there by implied invitation or was he a licensee? The rule so far as firemen are concerned is well settled. There is an annotation in the 30 L.R.A., N.S., 60, and 45 C.J., 794, §200, and the 13 A.L.R., 637. These authorities announce the rule that a fireman who goes upon the premises of another is a licensee and his rights are governed by the rules of a licensee. Cooley on Torts, page 645, refers to the right of firemen and even private persons going on adjoining property in order to put out a fire and keep it from spreading, that they are there as licensees.

The court of Virginia in Davis Bakery v Dozier, 124 SE, 411, in the opinion, the court in that case did not have before it a question of fire but it was a question where a person goes on property of another for the mutual benefit of both of them:

"But we do not intend to say that common interest and mutual advantage always of themselves constitute invitation. One might go into a stranger's house and put out a fire that threatened his own. Presence in such circumstances would be to the advantage of everybody, but it could not be said that there was an invitation."

The above is only a remark by the court in disposing of the case, but it leaves private persons attending a fire in the same relation as a fireman. Dixon was an employe of the Soap Company. The Soap Company was the owner of the property on which the tanks were located and the tanks and the owner of the Soap Company's property which was being exposed to destruction by this fire. Duncan, the secretary of the Soap Company, asked Dixon or directed him and other employes to go get the fomite machine and take it over to the fire. Mr. Dixon was at this fire by the invitation or direction of Mr. Duncan, his employer, and it appears that the same rule as to firemen should apply to Dixon. The fireman goes because it is his duty, made so by the public. He is interested in the public and public property and Mr. Duncan was interested in saving his own property, not the property of the Cities Service Company, but protecting his own. So that Dixon went there at the invitation of another party, and we think his relation at the fire was that of a licensee.

We do not think it makes very much difference whether he was there as a licensee or implied invitee. Referring to 45 C.J., 223, §235:

"While the owner, occupant or person in charge of the property is not an insurer of the safety of an invitee thereon, he owes to an invitee the duty of exercising reasonable and ordinary care for his safety and is liable for injury resulting from breach of such duty."

There is more of the definition of an invitee but the above is sufficient for the purpose. The Supreme Court in **Hannan, Admr. v Erhlich, 102 Oh St, 176,** says:

"A licensee takes his license subject to its attendant perils and risks, and the licensor owes him no duty except to refrain from wantonly and wilfully injuring him, and to exercise ordinary care after discovering him to be in peril; he should not be exposed to hidden dangers, pitfalls or obstructions."

This party was injured by the explosion of a tank. He had gone there and was putting out the fire. He was not injured by it until the fire got to the manhole in the tank. The plaintiff knew that the manhole was open, and he is charged with knowledge of a condition that the fumes from the gasoline in the tank would explode. The plaintiff knew there was a manhole there but he says he did not know the cover was off. He thought this hose was connected to the valve under the tank, which would be quite safe, and that he did not know any different, have any knowledge of the condition of the manhole, until just before the explosion. Dixon was not warned of this danger. The explosion injured him. If the plaintiff knew of the dangerous condition, knew the manhole was open, it was his duty to warn of the dangerous condition when the fire got over near that hole whether Dixon was an implied invitee or licensee, and if Dixon did not know of the danger he did not assume the risk of that dangerous condition when he went there. Whichever rule, it does not make much difference in this case, but the charge should not have been so general as it was; in fact, it left it to the jury if they even found that that motor was sparking when Dixon went to the fire and saw it and knew all about it, the jury could return the verdict for plaintiff.

It is urged that the verdict is against the weight of the evidence; in fact, asked the court to direct a verdict. We can not say that the case should be reversed on the weight of the evidence and we can not direct a verdict. There are many other errors claimed in the brief, but it is sufficient to say or find no other errors that would reverse this case except as stated.

The judgment is reversed and the cause remanded.

ROBERTS and FARR, JJ, concur in the verdict.