955 P.2d 47

James ORTH, a married man,
Plaintiff–Appellant,

v.

Kennard Ernest COLE, individually and doing business as the Apartments on Sandwood; Judy Husk, individually and as agent for Havasu Management Services, Inc., an Arizona corporation, Defendants–Appellees.

No. 1 CA–CV 97–0194.

Court of Appeals of Arizona,
Division 1, Department C.

March 10, 1998.

Levenbaum & Cohen by Steven A. Cohen, Phoenix, for Plaintiff–Appellant.

Teilborg, Sanders & Parks, P.C. by David J. Damron, Mary G. Isban, Melinda K. Cekander, Phoenix, for Defendant–Appellee Cole.

Grossman, Goldstein & Forsythe by Evan Goldstein, Scottsdale, for Defendants–Appellees Husk and Havasu Management.

## OPINION

NOYES, Judge.

¶ 1 James Orth ("Plaintiff") is a fireman who was injured during routine inspection of an apartment complex owned and operated by Defendants. In this lawsuit, Plaintiff claims that Defendants are at fault for his injuries and should pay damages. The trial court granted summary judgment to Defendants on grounds that the "fireman's rule" bars lawsuits such as this. Our jurisdiction of Plaintiff's appeal is pursuant to Arizona Revised Statutes Annotated ("A.R.S.") section 12–2101(B). We conclude that the fireman's rule does not apply to routine building inspections.

¶ 2 Plaintiff works for the Lake Havasu City Fire Department. One of the routine activities of that department is making safety

inspections of properties such as Defendants' apartment complex. Plaintiff made an unannounced visit to Defendants' property for one of these inspections. During the inspection, Plaintiff opened the door to an electrical panel, intending to see whether the breakers were properly labelled so that emergency personnel or others would know which to use in a given situation. The panel was located on an exterior wall, it was easily accessible, and it was unsecured. The complaint alleges that, "upon opening the panel door Plaintiff received severe burns to his face and arm, apparently due to an electrical malfunction inside the panel assembly." We are unsure of the liability theory, but that is not now an issue; the only issue presented is whether Defendants owed a duty to Plaintiff.

¶3 The existence of a duty is a question of law for the court. *Stephens v. Bashas' Inc.*, 186 Ariz. 427, 430, 924 P.2d 117, 120 (App.1996). We review questions of law *de novo*. *Owens v. City of Phoenix*, 180 Ariz. 402, 405, 884 P.2d 1100, 1103 (App.1994). To decide the duty question, we discuss the fireman's rule.

¶4 Arizona has two decisions on the fireman's rule, *Grable v. Varela*, 115 Ariz. 222, 564 P.2d 911 (App.1977), and *Garcia v. City of South Tucson*, 131 Ariz. 315, 640 P.2d 1117 (App.1981). In *Grable*, the fireman was injured in a fire, and he sued the parents of the child whose negligence started the fire. The claim was barred; the court concluded that "[t]he 'fireman's rule' . . . negates liability to a fireman by one whose negligence causes or contributes to the fire which in turn causes the death or injury of the fireman." 115 Ariz. at 223, 564 P.2d at 912. The court explained that a fireman "cannot complain of negligence in the creation of the very occasion for his engagement. In terms of duty, it may be said that there is none owed the fireman to exercise care so as not to require the special services for which he is trained and paid." *Id.* (quoting *Krauth v. Geller*, 31 N.J. 270, 157 A.2d 129, 131 (1960)).

¶5 In *Garcia*, police officers from two different agencies surrounded a house occupied by a gunman. 131 Ariz. at 317, 640 P.2d at 1119. One group assaulted the house without notifying the other, and one of the assaulting officers mistook the plaintiff police officer for the gunman and shot him. *Id.* The court held that the fireman's rule applied to police officers and that "[t]he pertinent inquiry is whether or not the negligently created risk which resulted in plaintiff's injury was the reason for his being at the scene in his professional capacity." *Id.* at 318, 640 P.2d at 1120. The court did not apply the fireman's rule; it reasoned that "[s]ince [plaintiff's] injuries were caused by the independent negligence of a third person [the sergeant who ordered the assault], the fireman's rule is inapplicable." *Id.* at 319, 640 P.2d at 1121. In our opinion, *Grable* exemplifies when the rule applies and *Garcia* signals that the rule is narrowly applied in Arizona. The question now becomes whether the fireman's rule applies to routine building inspections in Arizona. We conclude that it does not:

¶6 In *Labrie v. Pace Membership Warehouse, Inc.*, a fireman was injured when a water-line valve ruptured during his routine inspection of a newly installed fire alarm and sprinkler system. 678 A.2d 867, 868 (R.I.1996). In holding that the fireman's rule did not apply, the court observed that the fireman was injured while performing a function "akin to that of a building inspector" and that "[p]ublic employees, such as building inspectors, health inspectors, meter readers, and telephone-repair people, are owed the duty of reasonable care while on the premises in their professional capacity." *Id.* at 871. We agree. "Absent the emergency conditions of a fire or some similar exigency, the rule should not be applicable to bar negligence actions against tortfeasors." *Id.* at 872.

¶7 Rhode Island does not provide workers' compensation benefits to police and firefighters, *id.* at 869, whereas Arizona does so. *See* A.R.S. §§ 23–901(5)(a) (1995), 23–902(A) (Supp.1997), 23–1021 (Supp.1997). This distinction does not diminish the persuasiveness of the *Labrie* analysis. With or without the availability of workers' compensation, it would further no public policy to do what Defendants would have us do; to hold, in effect, that a property owner owes a duty of reasonable care to all building inspectors except those who work for the fire department.

¶ 8 A fairly debatable issue does exist here, and some cases do arguably support Defendants. One such case is *Walsh v. Madison Park Properties, Ltd.,* in which two firefighters were injured when a fire escape collapsed while they were inspecting it. 102 N.J.Super. 134, 245 A.2d 512, 514 (App.Div. 1968). Their lawsuit was barred, but not by application of the fireman's rule. Rather, the court noted that workers engaged to make repairs cannot recover for injuries resulting from the condition they were hired to repair; and the court saw "no reason in logic to distinguish between one who comes upon the premises to make repairs and one who, as here, comes there for the purpose of making an inspection to determine what repairs, if any, may be necessary." *Id.,* 245 A.2d at 516. To the extent that *Walsh* can be read as applying the fireman's rule to routine inspections, we do not agree with it, for such application expands the rule beyond the purpose for which it was developed.

¶ 9 The fireman's rule developed as an exception to the "rescue doctrine," which provides that an injured rescuer may recover damages from the original tortfeasor. *Gray v. Russell,* 853 S.W.2d 928, 930–31 (Mo.1993). In *Gray,* a police officer was injured when stairs collapsed during a routine building inspection. *Id.* at 929. The trial court applied the fireman's rule and the supreme court reversed; it held that the lawsuit was not barred by the rule "because the injuries complained of were not sustained under circumstances that would engage [plaintiff's] professional duty to rescue or to respond to an emergency." *Id.* at 931.

¶ 10 As explained by the *Gray* court, the "most persuasive and most nearly universal rationale for the fireman's rule" is this:

> Firefighters and police officers are hired, trained, and compensated to deal with dangerous situations affecting the public as a whole. Because of their exceptional responsibilities, when firefighters and police officers are injured in the performance of their duties the cost of their injuries should also be borne by the public as a whole, through the workers' compensation laws and the provision of insurance benefits and special disability pensions.

*Id.* The court noted that the foregoing considerations do not apply, however, in non-emergency or non-rescue situations:

> When, as here, a routine inspection is being carried out, the firefighter or police officer can choose not to proceed if the apparent risks present unreasonable danger. In such circumstances, public policy does not require exceptional rules of law such as the rescue doctrine and the firefighter's rule. The relative duties and liabilities of the parties can then be addressed by whatever traditional rules are applicable; here, those concerning premises liability.

*Id.* We agree with this reasoning and adopt it here. Because Plaintiff was injured in a non-emergency, non-rescue situation, traditional tort rules apply and the fireman's rule does not.

¶ 11 Reversed and remanded for further proceedings.

LANKFORD, P.J., and GARBARINO, J., concur.